

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

WITHLEY HOLLINS,

    Plaintiff,

v.

DRIVETIME AUTOMOTIVE GROUP,
INC. d/b/a DRIVETIME CAR SALES
COMPANY, LLC and BRIDGECREST
CREDIT COMPANY, LLC,

    Defendants.
_____/

CASE NO.: 3:18 cv 759-DPJ-FKB

**DEMAND FOR TRIAL BY JURY**

## COMPLAINT

Plaintiff, Withley Hollins (hereinafter "Plaintiff"), by and through the undersigned counsel, sues Defendants, Drivetime Automotive Group, Inc. d/b/a Drivetime Car Sales Company, LLC (hereinafter "DriveTime") and Bridgecrest Credit Company, LLC (hereinafter "Bridgecrest") (hereinafter collectively "Defendants"), and in support thereof respectfully alleges violations of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

### INTRODUCTION

1. The TCPA was enacted to prevent companies like Defendants from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4.      According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5.      Jurisdiction and venue, for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6.      Subject matter jurisdiction and federal question jurisdiction, for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, which provides that the District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and, this action involves violations of

47 U.S.C. § 227(b)(1)(A)(iii). *See Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. The alleged violations described herein occurred in Issaquena County, Mississippi. Accordingly, venue is appropriate with this Court under 28 U.S.C. § 1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

8. Plaintiff is a natural person and citizen of the State of Mississippi, residing in Issaquena County, Mississippi.

9. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendants are corporations responsible for attempting to collect an alleged consumer debt from Plaintiff.

11. Defendant, DriveTime, is a foreign limited liability company with its principal place of business located at 1720 West Rio Salado Parkway, Tempe, Arizona 85281, and which conducts business in the state of Mississippi through its registered agent, Corporation Service Company, located at 7716 Old Canton Rd, Suite C, Madison, MS 39110.

12. Defendant, Bridgecrest, is a domestic limited liability company with its principal place of business located at 1720 West Rio Salado Parkway, Tempe, Arizona 85281, and which conducts business in the state of Mississippi through its registered

agent, Corporation Service Company, located at 7716 Old Canton Rd, Suite C, Madison, MS 39110.

13. Plaintiff is the subscriber, regular user and carrier of the cellular telephone numbers at issue in this action, (662) XXX-6168 (hereinafter "cellular telephone"), and was the called party and recipient of Defendants' hereinafter described calls.

14. Plaintiff also received a substantial number of calls from Defendants to her place of employment at telephone number (662) XXX-1260.

15. Defendants intentionally, knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone, within the last four years, with such frequency as can reasonably be expected to harass and in effort to collect upon an alleged debt.

16. Defendants' calls to Plaintiff continued, on average, at least twice per day.

17. Upon information and belief, some or all of the calls Defendant placed to Plaintiff's cellular telephone were placed using an "automatic telephone dialing system" (hereinafter "Autodialer"), which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

18. Furthermore, each of the calls at issue were placed by Defendant using an artificial or prerecorded voice, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

19. Since early 2015, Defendants began bombarding Plaintiff's cellular telephone and place of employment in attempt to collect an alleged debt.

20. Upon receipt of the calls, Plaintiff's caller identification feature identified the calls were being initiated from, but not limited to, the phone numbers 803-223-0842, 602-627-9974, 602-627-9978, 770-268-4804, and 480-632-3090.

21. On several occasions over the last two (2) years, going back to at least mid-2016, Plaintiff instructed Defendant's agents to stop calling her cellular telephone.

22. Upon Plaintiff's receipt of one such call from Defendants, in or about June 2016, Plaintiff answered the call, received Defendants' artificial or prerecorded message, held on the line to be connected to a live agent/representative and informed said agent/representative to immediately cease all calls to her cellular telephone; furthermore, Plaintiff informed Defendants' aforementioned agent/representative that its incessant calls were harassing her and demanded Defendants immediately cease all calls to her cellular telephone; thereby, unequivocally revoking any previously perceived expressed consent to be called using Defendants' ATDS (including a predictive dialer), artificial voice or prerecorded message.

23. During the aforementioned phone conversation with Defendants' agent/representative, Plaintiff explicitly revoked any previously perceived expressed consent Defendants may have believed it had for placement of telephone calls to Plaintiff's cellular telephone by the use of an ATDS or artificial voice or prerecorded message.

24. Each subsequent call Defendants placed to Plaintiff's cellular telephone was done so after she revoked consent and without the express consent of Plaintiff.

25. Each subsequent call Defendants placed to Plaintiff's cellular telephone was knowingly and willfully placed to her cellular telephone without express consent.

26. Similarly, in or about May of 2017, due to the continued automated calls from Defendants, Plaintiff answered a call from Defendants, was met with an extended pause, was eventually connected to an agent/representative of Defendants, explained to the agent/representative that she was aware of her obligations and demanded that Defendants cease placing calls to her aforementioned cellular telephone number.

27. On multiple occasions, Plaintiff informed Defendants to immediately cease calling her cellular telephone; however, despite these attempts, Defendants' calls to Plaintiff's cellular telephone continued.

28. Defendants called Plaintiff on her cellular telephone in excess of three hundred (300) times since June of 2016 in attempt to collect an alleged debt. Due to the extraorindary volume of calls Plaintiff received, Plaintiff was unable to maintain a fully contemporaneous call log of each and every call she received from Defendants.

29. Defendants have, or should be in possession and/or control of, call logs, account notes, "dialer reports" and/or other records that detail the exact number of calls they placed to Plaintiff.

30. Despite actual knowledge of their wrongdoing, Defendants continued their campaign of abuse by continuing to call Plaintiff despite not having Plaintiff's express consent to call her cellular telephone.

31. Defendants have corporate policies and/or procedures to use an ATDS (including a predictive dialer) or artificial voice or prerecorded message, and to place

autodialed calls, just as they did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, including Defendants, to permit, elect, or invoke the removal of Plaintiff's cellular number from Defendants' call list.

32. The structure of Defendants' corporate policies and procedures permits the continuation of calls to individuals like Plaintiff, despite these individuals revoking any consent, or perceived consent, Defendants may have believed they had to place such calls.

33. Defendants' corporate policies and procedures provided no means for Plaintiff to have her cellular number removed from Defendants' call list; or, otherwise invoke and/or request the cessation and/or suppression of calls to Plaintiff from Defendants.

34. Defendants have corporate policies or procedures of using an ATDS (including a predictive dialer) or an artificial voice or prerecorded message to collect alleged debts from individuals, such as Plaintiff, for their financial benefit.

35. Defendants have had numerous complaints from consumers across the country against them asking to not be called; however, Defendants continue to call consumers.

36. Defendants have numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

37. Defendants have numerous complaints against it, across the country, asserting that its ATDS (including a predictive dialer) continues to call individuals who have revoked consent to be called by Defendants.

38. Defendants knowingly employ methods and/or have corporate policies and/or procedures designed to harass and abuse individuals such as Plaintiff.

39. Defendants knowingly employ methods that do not permit the cessation or suppression of autodialed calls to Plaintiff's cellular telephone.

40. None of Defendants' telephone calls placed to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

41. As acknowledged by Judge Easterbrook of the Seventh Circuit Court of Appeals in *Patriotic Veterans, Inc. v. Zoeller*, "every call uses some of the phone owner's time and mental energy, both of which are precious." 845 F. 3d 303, 305-06 (7th Cir.), *cert. denied sub nom. Patriotic Veterans, Inc. v. Hill*, 137 S. Ct. 2321, 198 L. Ed. 2d 725 (2017).

42. For each call Defendants placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from the occupation of her cellular telephone line and cellular telephone by unwelcomed calls which made the cellular phone unavailable for legitimate incoming or outgoing calls.

43. For each call Defendants placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from unnecessary expenditure of her time. The time Plaintiff spent on answered calls was unnecessary because she repeatedly asked for calls to stop. Additionally, Plaintiff expended unnecessary time for unanswered calls by dealing with notifications and call logs that reflected the unwanted calls. Furthermore, this also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

44. Each and every call placed without express consent by Defendants to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff.

45. Each and every call Defendants placed to Plaintiff's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

46. Each and every call Defendants placed to Plaintiff's cellular telephone without express consent resulted in the injury of trespass to Plaintiff's chattel, namely her cellular telephone and cellular telephone services.

47. As a result of aforementioned tenacious phone calls and collection efforts, Plaintiff was affected, both personally and individually, as she experienced an invasion of privacy and the intrusion upon her right of seclusion. Plaintiff also suffered from stress, humiliation, and aggravation due to the phone calls. Furthermore, Plaintiff was hindered by the loss of phone battery life as well as the cost of additional charging, and the intrusion upon and occupation of the capacity of her cell phone. All of the abovementioned were caused by, and/or directly related to, Defendants' attempts to collect a consumer debt allegedly owed by Plaintiff.

### COUNT I
### DRIVETIME AUTOMOTIVE GROUP, INC.
### d/b/a DRIVETIME CAR SALES COMPANY, LLC
### (Violation of the TCPA)

48. Plaintiff incorporates and realleges paragraphs one (1) through forty-seven (47) as if fully set forth herein.

49.     Defendant, DriveTime, willfully violated the TCPA with respect to Plaintiff, especially for each of the ATDS (including a predictive dialer) calls it made to Plaintiff's cellular telephone after Plaintiff notified and requested Defendant that she wished for the calls to immediately cease.

50.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS (including a predictive dialer) or artificial voice or prerecorded voice message without Plaintiff's prior express consent and in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, DriveTime, for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

**COUNT II**
**BRIDGECREST CREDIT COMPANY, LLC**
**(Violation of the TCPA)**

51.     Plaintiff incorporates and realleges paragraphs one (1) through forty-seven (47) as if fully set forth herein.

52.     Defendant, Bridgecrest, willfully violated the TCPA with respect to Plaintiff, especially for each of the ATDS (including a predictive dialer) calls it made to Plaintiff's cellular telephone after Plaintiff notified and requested Defendant that she wished for the calls to immediately cease.

53.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS (including a predictive dialer) or artificial voice or

prerecorded voice message without Plaintiff's prior express consent and in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, Bridgecrest, for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

Respectfully submitted,

_____
ROCKY WILKINS, ESQUIRE
Mississippi Bar No #: 99707
Morgan & Morgan, PLLC
4450 Old Canton Road, Suite 200
Telephone: (601) 503-1654
Facsimile: (601) 503-1606
Primary Email: Rocky@ForThePeople.com
Secondary Email: Shill@ForThePeople.com
*Attorney for Plaintiff*

